**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                CRIMINAL ACTION NO. 2:21-cr-00164

DARIUS JORDAN HENNING,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Defendant's *Motion to Suppress* (Document 27) together with the attached exhibits and the *Response of the United States to Defendant's Motion to Suppress* (Document 34). The Court has also reviewed the Defendant's *Supplemental Brief in Support of Motion to Suppress* (Document 49), and the *Supplemental Response of the United States to Defendant's Motion to Suppress* (Document 51). In addition, the Court has considered the evidence and testimony presented during the suppression hearing held on July 28, 2022. For the reasons stated herein, the Court finds that the motion should be granted, and the challenged evidence should be suppressed.

**FACTUAL BACKGROUND**

On September 23, 2021, the Defendant, Darius Jordan Henning, was charged in a three count *Indictment* (Document 1). The charges included: (1) Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1), (2) Felon in Possession of Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and (3) Possession of a Firearm with an

Obliterated Serial Number in violation of 26 U.S.C. § 5861(h).   He filed a motion to suppress on June 22, 2022, and the Court held a hearing on the motion on July 28, 2022.   In the motion, he seeks to "suppress all the physical evidence seized following law enforcement's illegal entry into Room 211 of the Econo Lodge" on April 12, 2021. (Document 27).

During the suppression hearing, the Court heard the testimony of three law enforcement officers involved in the process that led to the challenged entry of the hotel room.   Those officers include Patrolman Elijah Helsley from the Clarksburg Police Department and Officer Jeffrey Taylor and Detective Matthew Petty of the Charleston Police Department.   At the conclusion of the testimony, Counsel for the Defendant made an oral motion to submit supplemental briefing related to fraud and its impact on occupants' expectation of privacy in hotel rooms.   Subsequently, the Court granted the Defendant's motion (Document 46).   Based on the briefing, evidence and testimony presented at the hearing, the Court finds the following to be relevant to this motion.

Late in the evening on April 11, 2021, Patrolman Helsley received information regarding a joy riding complaint related to a 2008 Chevrolet Impala.   The victim identified the likely driver as Julia Pinion and had information that she was traveling with the Defendant, Darius Henning.

After conducting an NCIC check, Patrolman Helsley discovered multiple outstanding arrest warrants for the Defendant. These warrants resulted from a December 25, 2020 incident in Clarksburg, West Virginia, in which he was charged with Malicious Wounding and Prohibited Person in Possession of a Firearm, specifically, a sawed-off shotgun, and from an April 6, 2021 charge in Harrison County Magistrate Court of Prohibited Person in Possession of a Firearm.

Upon investigation, including discussion with the Econo Lodge desk clerk, Patrolman Helsley discovered that the Defendant and Ms. Pinion were likely located in Room 211 of the

2

Econo Lodge, located at 6311 MacCorkle Avenue SE, in Charleston, West Virginia. He also believed that the Defendant was in possession of a sawed-off shotgun, and he had information that the missing Impala was located in the parking lot across the street from the Econo Lodge.

Patrolman Helsley provided the information related to the car, the potential presence of the sawed-off shotgun, and the Defendant's active arrest warrants to officers with the Charleston Police Department (CPD), including Officer Taylor, who arrived at the Econo Lodge to further investigate during the early morning hours of April 12, 2021.   Officer Taylor confirmed the active arrest warrants and spoke with the desk clerk at the Econo Lodge.

After officers showed Ms. Pinion's photograph to the desk clerk, the clerk confirmed she had rented Room 211.   Evidence supports that she had rented the room under the pseudonym, "Jewell Lingenfleter."   Further, after being shown a photograph of the Defendant, the clerk confirmed that Mr. Henning had been with Ms. Pinion and one other person, later identified as Kayla Feiereisen, when the room was rented.   Because a pseudonym had been used to register for the room, the desk clerk asked that the officers remove the occupants from the room.   The desk clerk also informed Officer Taylor that Mr. Henning had been seen entering the room 45 minutes prior to the officer's arrival.

Officer Taylor relayed this information to Detective Petty, who instructed another officer to ask the desk clerk to provide a key for room 211.   After obtaining the key, officers approached the room.   In an attempt to gain entry to the room, the officers informed the occupants they were there to check on a 911 call of an injured female.   When this ruse was unsuccessful, officers attempted to use the key card multiple times to enter the room, but the door was kicked shut and held by someone inside.   Within approximately two minutes, the door was opened from the inside,

3

and both the Defendant and Ms. Pinion were arrested.  After the Defendant's arrest, officers sought and obtained warrants to search both the room and the vehicle where additional evidence underlying the present indictment was seized.

## STANDARD OF REVIEW

When deciding a motion to suppress, the district court may make findings of fact and conclusions of law.  *United States v. Stevenson,* 396 F.3d 538, 541 (4th Cir. 2005).  On a motion to suppress, the burden of proof is on the party who seeks to suppress the evidence.  *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981).  However, once the defendant establishes a proper basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence.  *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## DISCUSSION

The Fourth Amendment to the United States Constitution protects people against unreasonable searches and seizures.  U.S. Const. amend. IV.  This protection extends beyond traditional homes and encompasses occupants in a hotel room, as well. *Stoner v. California*, 376 U.S. 483, 490 (1964) ("[A] guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures."). Warrantless searches and seizures are presumptively unreasonable and violative of the Fourth Amendment, subject to limited exceptions.  *Katz v. United* States, 389 U.S. 347, 357 (1967).  However, "[t]o claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the placed searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998).

4

Assuming a defendant has standing to object to the entry and does so, evidence obtained because of the unreasonable search is inadmissible, absent an exception that would allow the Government to introduce it. *See Elkins v. United States*, 364 U.S. 206, 212-13 (1960). Absent one of these exigencies or specific exceptions, evidence seized during an unreasonable warrantless search must be suppressed under the exclusionary rule. *United States v. Calandra*, 414 U.S. 338, 347 (1974). This exclusionary rule extends to derivative evidence, or "fruits of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

One such limited recognized exception to the search warrant requirement is the execution of a valid arrest warrant in a residence, when certain other conditions are also met. An arrest warrant "implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton*, 445 U.S. at 603. The Fourth Circuit has clarified that "reason to believe" is akin to probable cause. *United States v. Brinkley*, 980 F.3d 377, 384 (4th Cir. 2020). Thus, entry is permissible when there is probable cause to believe that (1) the "location is the defendant's residence", and (2) that the defendant is at the location at that time. *Id.* (citing *United States v. Hill*, 649 F.3d 258, 262 (4th Cir. 2011)). Importantly, for purposes of this rule, a Defendant's residence is not merely where they are staying, but essentially where they live. *Id.* at 387-88 (explaining that probable cause that a suspect is *staying* somewhere is insufficient for *Payton*'s first prong).

This limited power to enter under *Payton*, however, does not extend to a third party's residence, where officers must obtain a search warrant prior to entry. *Id* at 385 (citing *Steagald v. United States*, 451 U.S. 204 (1981) ("[W]hen officers armed with an arrest warrant seek to apprehend the suspect in a third party's home, *Steagald*, not *Payton*, controls, and requires police

to obtain a search warrant founded on probable cause in order to enter the home.").   Further, and critically in this case, this specific exception to the search warrant requirement has never been extended to the hotel context.[1]   Thus, the legality of a warrantless entry into a hotel room, absent some exigency or consent, hinges on the occupant's legitimate expectations of privacy in the room under the circumstances. *See United States v. Castellanos*, 716 F.3d 828, 832 (4th Cir. 2013).

Here, law enforcement did not have a search warrant for the hotel room.   So, instead they must rely on a recognized exception to the warrant requirement.   The Defendant argues that police had no probable cause to believe that he was a resident of the hotel room, and therefore, *Payton* did not provide them with a right of entry to the room.   Further, he argues that under *Steagald* and *Brinkley,* an arrest warrant does not provide a right of entry to a third-party home absent a search warrant or other exigent circumstance.   Finally, he argues that he had a reasonable expectation of privacy in the hotel room, and a mere suspicion of fraud in obtaining a hotel room did not provide justification to enter the room.   The United States counters that he was either a resident of the hotel room giving law enforcement authorization to enter under *Payton*, or he was a mere visitor with no standing to object to the entry.   Further, the United States argues that the room was fraudulently obtained, thus destroying any legitimate expectation of privacy in the hotel room.

At the outset, the inquiry begins with the understanding that generally, the Fourth Amendment requires a warrant for entry. *Payton* and its progeny established a limited exception

---

[1]  Neither the Supreme Court nor the Fourth Circuit has affirmatively extended the authority for warrantless entry to execute an arrest warrant to hotel rooms or detailed what such an entry would require. Extending *Payton* and its progeny to hotel rooms, absent some alteration, would be difficult, since an individual, under typical residency analysis, would almost *never* be a resident of a hotel room. The typical analysis required to establish the requisite probable cause to believe a home is an individual's residence would almost never be present in a hotel. Thus, while a hotel room offers Fourth Amendment protections to its occupants, the line of cases detailing the contours of permissible warrantless entry to a residence, as currently developed, offer little guidance regarding occupants of a hotel room, like the Defendant.

to that requirement where law enforcement may enter a suspect's private residence with only an arrest warrant so long as specific conditions are met.   Viewed properly, as a limited exception to the warrant requirement, it is clear that unless those specific conditions are met, a warrant is required.   As neither the United States Supreme Court nor the Fourth Circuit has expressly extended the exception to the hotel context, the cases do not provide support for warrantless entry into a hotel room.   Instead, the question hinges on the Defendant's expectation of privacy.   As the United States concedes, as an occupant of the hotel room, the Defendant had a legitimate expectation of privacy. *See Stoner*, 376 U.S. at 490.   Thus, the only remaining question to resolve is whether any other exception to the warrant requirement was applicable, given the scenario at the Econo Lodge on April 11, 2021.

While the United States is correct that the expectation of privacy for hotel occupants is not limitless, it has failed to prove by a preponderance of the evidence that use of an alias to register for a hotel room is, alone, sufficient for law enforcement to conduct a warrantless entry and circumvent an occupant's privacy expectation.   According to the testimony, the officers and the hotel clerk identified the use of an alias to register for the room, the officers were asked by the clerk to remove the occupants of Room 211 and officers subsequently requested that the hotel clerk provide a key to facilitate removing the occupants. The United States has provided no evidence of any crime committed in using an alias, or any other illegality to justify law enforcement involvement.   There was no indication they had unlawfully refused to leave the premises or had become illegal trespassers, nor is there any indication they failed to provide payment or steal from the hotel.   Even assuming that registering the room using an alias was a violation of  Econo Lodge's policy or some breach of contract, law enforcement's warrantless

7

entry is not legally supported. The circumstances presented here fall short of those found in the case law cited by the United States, where there was evidence of some illegality terminating an expectation of privacy.

Alternatively, even if the authority outlined in *Payton* and its progeny had been extended to the hotel context, because he was not a resident of the room, the arrest warrant did not provide law enforcement with authority to enter the room without a search warrant, and the evidence would still face suppression.   The Fourth Circuit explicitly rejected the type of broad reading of residency encouraged by the United States. *See Brinkley*, 980 F.3d at 389.   There, the court specifically confined residency to the primary residence of the individual and rejected the position that someone staying in a place, even regularly, was sufficient to establish residency. *Id.*   Thus, the United States' insistence that occupancy is interchangeable with residency is unpersuasive. When examining a potential residency under *Payton*, the Fourth Circuit has looked for specific indicators that this is where the Defendant truly lived, noting several factors that may support a finding of residency such as warrants, postal records, credit card applications, utility bills, car registration, and more. *See Brinkley*, 980 F.3d at 389.   These types of specific, official records present more substantial indications of residency than mere occupancy of a hotel room and undermine the notion that short term hotel stays could reasonably amount to residency for purpose of applying *Payton's* holding.   Again*, even if Payton* and its progeny had been extended to hotel occupancy, once the Defendant's status as a resident is rejected, *Steagald* and *Brinkley* would mandate a search warrant prior to entry. *Id.* at 385.

Conflating occupancy and residency would effectively render Payton's first prong meaningless, reducing its two-part test to the single inquiry of whether the individual is likely in

the room, to allow for warrantless entry. This would eliminate any need for law enforcement to *ever* attempt to establish that a home is the suspect's residence prior to warrantless entry. Accepting this result would both circumvent Supreme Court precedent and require ignoring the breadth of case law discussing the residency analysis of the first prong.

Additionally, this reading would present broader policy concerns as it would effectively give law enforcement unlimited authority to enter any dwelling at any time to execute an arrest warrant on a third party, as long as there was probable cause to believe he or she was present at the location. This would reflect a substantial encroachment on the Fourth Amendment's protections and go far beyond the exception to the warrant requirement outlined in *Payton*. Absent affirmative case law supporting such a rule or some other compelling rationale, the Court will not endorse such a break with precedent and longstanding principles of the Fourth Amendment. *See Katz*, 389 U.S. at 357 (explaining that exceptions to the warrant requirement must be "*specifically established and well delineated*").

The parties have not argued, and the Court has not found, from the evidence, consent or the existence of any exigent circumstances that would justify warrantless entry into Room 211. Although the United States argues, alternatively, that the Defendant was a "visitor," the evidence presented indicates that he was simply an occupant of the hotel room. Therefore, given the Defendant's legally established expectation of privacy in the hotel room, the Court finds the United States has failed to prove, by a preponderance of the evidence, that the entry into Room 211 and the subsequent derivative searches were reasonable. Thus, the evidence must be suppressed.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Motion to Suppress* (Document 27) be **GRANTED**, and that the evidence detailed in the *Motion* be suppressed.   Further, the Court **ORDERS** in the event the charges stemming from the April 12, 2021 incident are the only charges on which the Defendant, Darius Jordan Henning, is being held, that he be **RELEASED IMMEDIATELY**.

. The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:     August 17, 2022

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

10